MHN



RECEIVED LCW

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LAMAR EWING

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

JERRY BALDWIN, DARRYL

JOHNSON, YENITA WRIGHT,

TERRI ANDERSON, ROGER

WALKER JR., C. TARR,

and MARK HOSEY

_____

(Enter above the full name of ALL
defendants in this action. <u>Do not</u>
use "et al.")

**08CV4427
JUDGE HOLDERMAN
MAGISTRATE JUDGE KEYS**

- - - - - - - - - - - - - - - -

**CHECK ONE ONLY:**

___✓___     **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
U.S. Code (state, county, or municipal defendants)

_____     **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

___✓___     **OTHER** (cite statute, if known)  Title 42 U.S.C. 1331 (a) and 1341.

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I.  **Plaintiff(s):**

A.  Name: ___Lamar Ewing___

B.  List all aliases: _____

C.  Prisoner identification number: ___N - 02620___

D.  Place of present confinement: ___Stateville Corr. Center___

E.  Address: ___Route 53, P.O. Box 112, Joliet, Illinois 60434___

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.  **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.  Defendant: ___Jerry Baldwin___

Title: ___Correctional Counselor #2 / Protective Custody Assignment Officer___

Place of Employment: ___Stateville Corr. Center___

B.  Defendant: ___Darryl Johnson___

Title: ___Inter Affairs Investigator___

Place of Employment: ___Stateville Corr. Center___

C.  Defendant: ___Venita Wright___

Title: ___At the time of accrual - Assistant Warden of Programs.___

Place of Employment: ___Stateville Corr. Center___

Continue additional page 2A

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

D. Defendant: Terri Anderson
Title: Administrative Review Board member
Place of Employment: Stateville Corr. Center

E. Defendant: Roger Walker Jr.
Title: Director Department of Corrections
Place of Employment: Department of Corrections

F. Defendant: C. Tarr
Title: Internal Affairs Investigator
Place of Employment: Stateville Corr. Center

G. Defendant: Mark Hosey
Title: Assistant Warden Programs
Place of Employment: Stateville Corr. Center

2A

III.   **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number: LAMAR EWING VS THOMAS PAGE, et al., No. 96-777-WDS

B.   Approximate date of filing lawsuit: October 17, 1996

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: LAMAR EWING

D.   List all defendants: Thomas Page, Odie Washington, Roger Cowan, Mark Pierson, Colleen Smith, Rick Gilder Aaus, Richard Allison, Ronald Hillerman, Thomas Maue, Officer Damon, John Butter, Carl Caraway, Paul Rainwater, M. Whittenborn.

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Southern District of Illinois

F.   Name of judge to whom case was assigned: William D. Stiehl

G.   Basic claim made: 8th Amendment, failure to protect

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Voluntarily withdrew complaint after defendants voluntarily conceded and placed me in protective custody.

I.   Approximate date of disposition: June 8, 1998, see Exhibit A-A2

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

3

Revised 9/2007

A. Name of case and docket number: LAMAR EWING vs Roger E. Walker Jr., et al, No. 07-3300

B. Approximate date of filing suit: November 9, 2007

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: LAMAR EWING

D. List all defendants: Roger E. Walker Jr., Eddie Jones, Sherry Benton

E. Court in which suit was filed (if federal court, name the district; if state court name the county): Central District of Illinois

F. Name Judge to whom case was assigned: Harold A. Baker

G. Basic claim made: 8th Amendment, failure to protect

H. Disposition of this case (for example: Was it dismissed)? Was it appealed? Is it still pending?): It is still pending and in discovery stage.

I. Approximate date of disposition: None, still pending

STATE OF ILLINOIS )
)SS
COUNTY OF  WILL )

## AFFIDAVIT

I,   Lamar Ewing          do hereby declare and affirm that the following
information within this affidavit is true and correct in substance and in facts:

That I am currently incarcerated at Stateville Correctional
Center, where I am housed in X - House.
   That I have approximately six Excess Legal Storage Boxes
that are stored in the institutional Library. However, I am
not able to retrieve the necessary documents to complete
or provide the detailed information requested within the com-
plaint form. Although I have submitted several formal and also
informal requests to   access my legal storage boxes. I have
been unsuccessful. Based upon prison official failure to pro-
vide me access, and through my conferring with fellow inmates
it is my belief that officials will continue to not provide me
access, due to lockdown status of the institution.
   For the above reasons, I hereby verify that, I have bought
priorly approximately seven lawsuits in various court's ranging
from the Southern District - Northern District - & the Circuit
Court of Randolph County. To the best of my recollection a total
of five of these lawsuits were dismissed as frivolous. Therefore,
the " Three strike " provision of the Prison Litigation Reform
Act is applicable. However, I assert imminent danger of serious
physical injury pursuant to 28 U.S.C.A. § 1915 (a,g), due to
defendants failure to provide me with reasonable safety.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of
perjury, that everything contained herein is true and accurate to the best of my knowledge
and belief. I do declare and affirm that the matter at hand is not taken either frivolously or
maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this  27  day of   July    , 200 8 .

_Lamar Ewing_
3B                                      Affiant

IV.    **Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

1) Plaintiff alleges that, the defendants, Correctional officials have violated his Eighth Amendment rights by acting with deliberate indifference to his safety. Specifically, where the defendants having repeatedly denied him placement in approved protective custody (Group #2) at Stateville Correctional Center, despite the defendants knowledge that he faces imminent danger from a long list of documented enemies, gang members, and their affiliates, (see Plaintiff's attached affidavit; Exhibits A-A2; B-B2; C-C2; D-D2) including but no limited to F-House general population.

2) Plaintiff alleges that, Jerry Baldwin is personally involved in the present cause of action where, he initially interviewed plaintiff for protective custody placement on October 15, 2007, and where he was interviewed by Darryl Johnson

4

on November 8, 2007, and was thereafter denied protective custody placement on or about November 11, 2007, by the above defendants, and Venita Wright, (see Exhibits C - C1).

3) Plaintiff alleges that, Terri Anderson and Roger Walker Jr., reviewed plaintiff's appeal, and are personally involved in the present action where, they had knowledge of, consented to, approved, and condoned the protective custody denial, (see Exhibit D).

4) Moreover, the defendants have acted with deliberate indifference to provide reasonable safety where, while in general population (F-House) plaintiff again requested reinstatement of protective custody because of renewed threats of harm, (see Exhibits E - E2; F - F3; G - G3; H - H2; and I - I1).

5) Plaintiff alleges that, after numerous pleas to be returned to the Protective Custody Unit (X-House) he was finally moved on April 30, 2008, thereafter,

Revised 9/2007

on or about May 16, 2008, he was again initially interviewed by Jerry Baldwin for protective custody placement, and also interviewed by C. Tarr on July 6, 2008. Thereafter, he was again denied protective custody placement.

(6) Plaintiff alleges that, the defendants acts or omissions are in violation of the "Meeks Consent Decree", where plaintiff is being forced into the general population under the premise of a re-interview for protective custody placement, after receiving a disciplinary report dated April 19, 2007, and which warranted extraction from protective custody. However, defendant Roger Walker Jr., expunged said report, (see Exhibit J - J2 and K), that caused plaintiff's being ejected from protective custody, yet continues to be used as a pre-text for denying plaintiff re-entry thereto, where the defendant Roger Walker Jr, action in expunging said report is no less a concession that the adjustment committee disposition of retention in segregation and other sanctions were erroneous, thereby if not for, the action, plaintiff would have

remained in protective custody.

7) At the time the claims arose herein, the defendants were acting under color of state law.

8) Each of the defendants are being sued individaully as to monetary relief, and officially as to injunctive relief.

**V.    Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

A) Issue a declaratory judgment stating that: (1) The defendants actions in denying plaintiff protective custody placement has violated his Eighth Amendment right.

B) Grant plaintiff nominal damages as to each defendant individually and severally.

C) Grant plaintiff punitive damages as to each defendant individually and severally.

D) Grant a preliminary injunction, ordering protective custody placement

VI.    The plaintiff demands that the case be tried by a jury.  ☐ YES  ☒ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___27___ day of ___July___, 20_08_

_____Lamar Ewing_____
(Signature of plaintiff or plaintiffs)

Lamar Ewing
(Print name)

N-02620
(I.D. Number)
Stateville Correctional Center
Route 53, P.O. Box 112
Joliet, IL. 60434
(Address)

6

STATE OF ILLINOIS )
COUNTY OF WILL    ) SS
                  )

## AFFIDAVIT

I, Lamar Ewing do hereby declare and affirm that the information within this affidavit is true and correct in substance and fact:

1.  At some time during 1985, I was assaulted after arguing with a known Disciple gang chief named Harris. The assault took place at Stateville Correctional Center in which I received broken ribs, several facual injuries and an eye injury that required two surgical operations to restore full vision to my right eye. This incident was reported to prison officials. As a result of the attack and continued threats of harm by Disciple gang members, I was placed in protective custody.

2.  In 1994, I was transferred to the Pontiac Correctional Center. The Disciple gang chief Harris was also incarcerated there. He renewed his threats of phsical harm, and consequently after reporting the continued threats to prison officials, I was again placed in protective custody.

3.  In May 1995, I was transferred to the Menard Correctional Center. At Menard, I was again threatened by a known Disciple gang member Larenzo Wilson. Wilson was incarcerated at the Stateville Correctional Center at the time I was there. Having remembered me from Statville, Wilson along with other Disciple gang members threatened me. After reporting my history of assault to prison officials, and that Doctors have warned me that any further injury to my eye can result in total blindness. I was denied protective custody. Thereafter, I was forced to

1

go to the West House general population unit. I was also denied assistance by prison officials in identifying all the gang members who threatened me at the time Wilson issued threats of physical harm.

4.  While housed in the West Unit, two correctional officers informed me that gang members had ill intentions towards me, and that I should go to protective custody before I was hurt. In the mean time I was moved from various cells because gang members did not want me in their cells. The officers also told me that gang members would demand that I pay, one way or another. In addition, the officers stated that they had seen inmates get assaulted because they did not succumb to gang pressure. Consequently, I then signed protective custody papers.

5.  Approximately one half hour after the officers left my cell, inmate Baity was placed in the cell with me. Baity asked me whether I had paid three hundred dollars to the Gangster Disciples, and that if I hadn't I might get hurt. Baity is affiliated with the Black Gangster Disciples, he did not threaten or harm me in any way. And also assured me that he did not have any problem with my living in the cell.

6.  On September 5, 1995, I was placed in cell #921 with a Disciple gang member named Davis. Davis attempted throughout the night to presure me for sex. I wrote the West Unit manager, Mr. Gross concerning the sexual pressures, and also about the fact that gang members were controling the cells I was being placed in, and that I had signed protective custody papers. I was moved the following morning. However, before leaving the West Unit, I was confronted by Lt. Broshears, whom I had reported for misconduct

2

due to his placing me in the cells with Disciple gang members while knowing of their ill intentions. This misconduct was reported to the West Unit manager, Mr. Gross. Lt. Broshears threatend to make my time hard. I was then taken to the North Protective Custody Unit. Where after reporting these matters to prison official, I was again denied protective custody placement.

7. In January 1996, I was moved to the disciplinary segregation unit where my cellmate Criag Young physically and sexually assau-ulted me. Specifically, on January 30, 1996, I was awaken by Young in my bed. In response to Young's attempts to penetrate my rectum, I began wrestling with Young, who dragged me out of my bed to the floor. I began having an asthma attack and Young overpowered me. Young again attempted to penetrate my rectum but due to my continuing to struggle, he was not able to succeed. Young grew more angry and struck me several times with his fist, leaving me motionless. Young ordered me to perform oral sex on him, and I refused. Young again began striking me with his fist until I suecumbed to his demands for oral sex. Thereafter, I performed oral sex twice that night, and demands made the following day by Young.

8. After performing oral sex for Young on the night of January 30, 1996 or early morning hours of the 31st, I wrote several notes to prison staff and Warden Page. I gave a gallery officer and subsequently another officer a note explaining the assaults. No one responded to these notes.

9. On the morning of February 1, 1996, after numerous attempts to gain the assistance of staff, at approximately 11:30 a.m., I observed Assistant Wardens Pearson, and Cowan walking by my cell. I than called out to Mr. Cowan who stopped. I handed him a note informing him of the assaults. After partially

3

10. On August 1, 1996, I was placed in the East House general population. I was celled a gang member named Jones. On the same day I wrote letters to Assistant Warden Cowan, and other prison staff, and also personally spoke with Warden Thomas Page who referred the matter of moving me to the protective custody unit to unit manager Steve Bradley. I remained in the East House general population until August 19, 1996, when I was moved to the protective custody unit.

11. While at the protective custody unit I was interviewed by prison officials. I explained the threats, physical and sexual assaults and continuous threats by gang members, in addition to threats made by segregation unit workers Porter who is a known Gangster Disciple gang member, inmate Montoya who is a known Latin King gang member. I informed official that I was threatened in retaliation to my filing formal grievances concerning their gang activities. I further informed officials that the confidentially of the grievance had been violated by staff in that there was no way for inmates Montoya, and Porter to find out that I had filed grievances against their gang activities unless staff had adviced them of such. I was thereafter denied protective custody placement.

12. On or about August 30, 1996, I filed in the United States District Court for the Southern District of Illinois a cause of action under 42 U.S.C. 1983, and a motion entitled Motion For Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule Civil Procedure, Rule 65, which the court construed as a Motion for Preliminary Injunction. Lamar Ewing vs. Thomas Page, et al., Case No. 96-777-WDS.

13. In November 8, 1996, I was escorted to the visiting room. Upon arrival I was introduced to an individual whom identified himself as an Will County Court appointed private investigator, Mr. Dick Baum. I consented to being interviewed by Mr. Baum in relation to an stabbing incident that occured in Stateville Correctional Center in about 1994. The incident involved several gang members and inmates Miles Barnes.

14. On or about Feburary 20, 1997, I was again removed from protective custody unit after being denied protective custody placement. I was placed in the South House cell # 446 where one of the Disciple gang members whom had threatened me previously was housed in cell # 415. Upon seeing me this inmate issued threats of physical harm. That night I wrote to Warden Thomas Page and other officials informing them of the threats. The following day while sleeping, I was awaken by a sharp pain in my neck. After sitting up and grabbing my neck where the pain was, I notice blood on my hand. I also noticed that several inmates were standing a few cells down the gallery. One of these inmates was the one that had threated me previously. He and several other inmates looked at me while laughing. I than begun hollering for the officer. I was removed from the cell and escorted to hospital where I was treated for a stab wound to my neck. The wound required bandaging but not stitches. I was interviewed by an Internal Affair investigator, who also took photo's of the injury. I was than escorted to the protective custody unit where I was interiewed for protective custody placement and again denied.

15. In 1997, I was twice taken to the circuit court of Will County in relation to the November 8, 1996 interview with court appointed investigator, Mr. Baum. As an result the inmate gang members became awhere of my statements implicating their involvement in the 1994 stabbing incident involving inmate Miles Barnes.

16. In June 1997, I along with inmate Pearson (Pokey) who I had identified to Investigator Baum as having funished inmate Wilson a knife to stab inmate Miles. We were taken to the United States District Court for the Northern District, where inmates Wilson, Pearson, and several other inmate gang member were present. We were placed in the bullpen where inmate Wilson immediately told Pearson of my informing on him and other inmates concerning the stabbing incident. Pearson issued threats in a loud voice and the officer's notice the commotion, and thereby immediately rem— oved me from the bullpen, and placed me in an ajoining bullpen separate from them.

17. After I testified in court Pearson and myself were returned to Menard Correctional Center where Pearson continued to issue threats, one being that, he would have me hit wherever I went. I thereafter again sought protective custody placement based upon Pearson's threat of physical harm. After informing officials of the threats and the events leading up to them. I was agin denied protective custody placement.

18. In 1998 after arguments were held in case No. 96-777-WDS in relation to my motion for injunctive relief the Illinois Depar— tment of Corrections, Director, Odie Washington, Warden Thomas Page and officials of Menard Correctional Center voluntarily conceded to my request to be placed in protective custody.

19. Thereafter through court appointed counsel, Robert P. Berry, I petitioned the court to withdraw the requested injunctive relief without prejudice. The basis for the motion being the voluntary concession of the defendants to place me in protective custody. The motion was granted by Judge William D. Stiehl on June 8, 1998.

20. Since 1998, I was repeatedly on numerous occasions approved for protective custody placement due extensive history of being assaulted and threatened, by known gang members.

21. In 2002 as the result of Menard Correctional Center's protective custody unit being downsized. Numerous protective custody inmates were transferred to Pontiac Correctional Center's protective custody unit. Also while in Pontiac I was re-classified as an Extremely High Escape Risk, which required my being transferred yearly between Pontiac, Menard, and Stateville Correctional Center's. In 2003, I was transferred to Stateville Correctional Center as a result of the new classification where I was placed in protective custody due to my extensive history of being assaulted and threatened, by known gang members.

22. On July 17, 2004, I was again assaulted by an inmate Garrett who struck me several times with an crutch. This assault was witnessed by correctional officer Gonzales. I was taken to the hospital where I was treated for an head injury and a broken right hand. Inmate Garrett was disciplined by prison officials for the assault.

23. In July 2004 I was moved again to Pontiac Correctional Center. In January 2005 I was again placed in protective custody at Pontiac due to my extensive history of being

assaulted by known gang members. In late January I was transferred to Menard Correctional Center where again, I was placed in protective custody due to my extensive prior history of being victimized and threatened.

24. In 2006, I was again moved to Pontiac Correctional Center where I was again placed in protective custody due to my extensive prior history of being victimized and threatened

25. On April 19, 2007, I was removed from the South Protective Custody Unit and placed in the East Disciplinary Segregation unit for an alleged disciplinary infraction. After having been found guilty of the infraction the institutional adjustment committee recommended 90 days segregation, and 90 days demotion in grade. I grievanced the disciplinary proceeding which was overturned by the Director of the Department of Corrections on September 17, 2007.

26. However, prior to the overturning of the disciplinary proceeding, on July 8, 2007, I was re-interviewed for protective custody placement, by correctional counselor, McNabb. I was denied protective custody placement on or about July 18, 2007, and was informed in person by Mr. McNabb at which time I appealed that decision by signing an appeal form. On or about August 28, 2007 an hearing was held before Sherry Benton of the Office Of Inmate Issues. At the hearing I submitted a written summary of notes providing an chronicle of all incidents of assaults, threats, injuries, repeated protective custody placements, and the courts

8

order by Judge William D. Stiebt in case number 96-777-WDS. Moreover, I referred Ms. Benton to a copy of my declared enemy list containing numerous listed inmates that the Department of Corrections officials are to keep me separate from due to past assaults and threats of physical harm. Also submitted to Ms. Benton was an Investigative Report authored by Will County Court appointed investigator, Dick Baum which summarized our interview on November 8, 1996 in which I implicated known inmate gang members as having complacency in an stabbing. Subsequently, my appeal was denied by Director, Roger Walker Jr., who concarred with Warden, Eddie Jones denial of protective custody placement, and the recommendation of Ms. Benton.

27. Subsequently, on or about September 8, 2007, I was removed from the protective custody kick out gallery in the West Housing Unit, and moved to an general population gallery where I was celled with inmate James Fields who had recently been release from disciplinary segregation due to alleged Security Threat Group infractions. And who is also an known high ranking member of the Disciples. Upon my arriving in the cell, inmate Field asked, if I was hooked up (affiliated with a gang), my response was, no. After several days inmate Fields asked me if I was a stool pigeon, and stated that some of his guys say that, I went to court on his guys before and I am an informant. I stated, I don't know what guys are talking about. I night I wrote to correctional counselor, Sandra Russell advising her of the coversation and

9

requesting to be removed from the cell with Fields. I received no response. On September 19, 2007, Fields was transferred to Menard Correctional Center. Before he left the cell, he stated, I hope you come to Menard than we got your ass.

28. Due to my knowing that I would be transferred as a result of my being denied protective custody placement. I than again wrote to correctional counselor Sandra Russell advising her of inmate Fields threat, and asking that she submit me for transfer to Stateville Correctional Center. On October 10, 2007, I was transferred to Stateville.

29. On October 15, 2007, while being interviewed for the orientation process by correctional counselor Jerry Baldwin, I requested protective custody placement. During the interview for placement by Mr. Baldwin, I submitted the same documents as priviously submitted to Sherry Benton of the Office of Inmate Issues. Also submitted was Ms. Benton's prior recommendation for protective custody placement at Pontiac. Upon reviewing the recommendation Mr. Baldwin stated, "they may not approve you because the recommendation carries alot of weight and the Director signed off on it". I than reiterated to Mr. my extensive history of assaults and threats by known gang member and advised him of my belief that inmate Lorenzo Wilson is currently here at Stateville and housed in the general population. And that Wilson was one of the Disciple gang members who had threatened me privously in Menard in 1995. I also requested that the matter be referred to the Internal Affairs Unit for investigation to

substantiate privous investigations that had been performed by both Stateville and Menard Internal Affairs Unites as a result of assaults by known gang members and injuries as an result.

Pursuant to 28 U.S.C. 1746, or 18 U.S.C. 1621, I declare under penalty perjury, that the information herein is true and correct to the best of my knowledge and belief.

Signed this __6th__ day of __November__ 2007,

__Lamar Ewing__
                          Affiant

11

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS



Lamar Ewing,                        )
                                    )
            Plaintiff,              )       Civil No: 96-777-WDS
                                    )
    v.                              )
                                    )
                                    )
Thomas Page, Cathy Smith, et al.    )
                                    )
            Defendants.             )


### REQUEST TO WITHDRAW MOTION FOR INJUNCTIVE RELIEF

COMES NOW Lamar Ewing, by and through his undersigned appointed counsel, and respectfully requests that this Court allow Plaintiff leave to withdraw, without prejudice, its Motion for Injunctive Relief filed May 1, 1998. In support of this request, Plaintiff states:

1. After arguments were heard in the above-referenced matter by Magistrate Judge Cohn on May 1, 1998, officials at the Menard Correctional Center voluntarily honored Plaintiff's request to be placed into Protective Custody.

2. At present, Plaintiff remains in Protective Custody at Menard Correctional Center.

3. As such, the relief sought by Plaintiff by Order of this Court has been granted by the actions of the Defendant.

4. Defendants' actions have made Plaintiff's Motion for Injunctive Relief moot.

WHEREFORE, Plaintiff respectfully requests that this Court allow him leave to withdraw his Motion for Injunctive Relief, without prejudice, on the grounds that the relief sought in the Motion has been voluntarily granted by Defendants.

SO ORDERED: _____  Date:_____

Exhibit A 1
COPY

In the alternative, if this Court denies Plaintiff's request to withdraw his Motion for Injunctive Relief, Plaintiff makes the following Objections to the Magistrates Report and Recommendation states pursuant to 28 U.S.C. §636(b):

1.   The Magistrate's finding that Plaintiff has an adequate remedy at law misapplies facts and the United States Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994). Farmer stands firmly for the principle that an inmate does not have to wait for the occurrence of a "tragic event" in order to receive injunctive protection from the Court. Id. at 845. The facts before the Court establish that Plaintiff's prior dealings with the "Disciples" prison gang, including an argument with a gang chief at Statesville prison and the passing of information to a private investigator about a gang member, has created a situation causing acute and immediate danger to Plaintiff if he is released into the general prison population. The "Disciples" gang has collectively declared a "jihad" against Plaintiff. As such, the general prison population poses a clear and immediate threat of serious physical and sexual assault against Plaintiff. Surely the United States Supreme Court in Farmer did not intend a legal action for damages against the prison officials to preclude Court ordered protection where the threat of physical and sexual assault continues while the law suit is pending.

2.   The Magistrate's finding that Plaintiff's injury is "speculative" is not supported by the record. The Report and Recommendation states no facts used by the Magistrate to conclude that Plaintiff's injuries would be speculative. In fact, Judge Cohn merely cites case law as authority without applying such law to the facts on the record. The record establishes that the Disciples have retaliated and will continue to retaliate against Plaintiff because Plaintiff had a fight with a gang chief and gave information to a private investigator. Plaintiff has a documented history of physical and sexual abuse. This is not a case of mere apprehension or groundless worry.

2

Exhibit A 2

**COPY**

3.   The facts on the record are sufficient to establish a claim for injunctive relief under

United States v. Rural Electric Convenience Cooperative Co., 922 F.2d 429, 432 (7th Cir. 1991).

Respectfully submitted,

LEWIS, RICE & FINGERSH

By: _____
John J. Gazzoli, Jr.
Robert P. Berry

500 North Broadway, Suite 2000
St. Louis, Missouri  63102
Telephone: (314) 444-7600
Facsimile:   (314) 241-6056

Appointed Counsel for Plaintiff
Lamar Ewing

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was sent via first class mail  to Mike Wolf of the Illinois Attorney General's Office this 2nd day of June, 1998.

3

OM0RM003                    ILLINOIS DEPARTMENT OF CORRECTIONS -- OTS                3/12/
PAGE: 0001                    PRM -- KEEP SEPARATE FROM INQUIRY                     17:52:44
                                          DECLARES

IDOC#: N02620 EWING, LAMAR              1 B H   STA-F -04-14              07/08/201

|        |                          | KSF | | | EFFECTIVE | | | RPTG | CNSLR |
| IDOC # | --------NAME------------ | --LOC-- | | -RSN- | ---DATE--- | | | -INST- | --ID- |
|--------|--------------------------|-----|----|------|----|----|----|--------|-------|
|        | JONES, LEROY             | DIS | 00 | ASBY | 02 | 04 | 00 | MEN | 00256 |
|        | BROWN, KENNETH           | DIS | 00 | GEN  | 01 | 19 | 00 | MEN | 00262 |
|        | HARRIS, CHARLES          | PON | SP | NSPC | 09 | 21 | 01 | MEN | 00256 |
|        | PORTER, CALVIN           | DIS | 00 | GEN  | 08 | 20 | 96 | MEN | 00230 |
|        | MONTOYA, ANTHONY         | 001 | 00 | GEN  | 08 | 20 | 96 | MEN | 00230 |
|        | THOMAS, BERNARD          | 001 | 00 | GEN  | 03 | 06 | 00 | MEN | 00256 |
|        | HOLMES, MARCUS           | DIS | 00 | GEN  | 01 | 27 | 98 | MEN | 00118 |
|        | PEARSON, ALEX            | PON | SP | GEN  | 09 | 26 | 97 | MEN | 00083 |
|        | JOHNSON, ERIC            | MEN | N2 | NSPC | 09 | 21 | 01 | MEN | 00256 |
|        | DORRIS, LORENZO          | MEN | N2 | GEN  | 01 | 27 | 98 | MEN | 00118 |

NEXT KEY DATA: IDOC #: N02620
PF7: PAGE BACK  PF8: PAGE FWD

Date: 3/12/2008 Time: 5:52:48 PM

Exhibit B1

OM0RM003                ILLINOIS DEPARTMENT OF CORRECTIONS -- OTS                3/12/
PAGE: 0002                PRM -- KEEP SEPARATE FROM INQUIRY                      17:52:44
                                      DECLARES

IDOC#: N02620 EWING, LAMAR                1 B H  STA-F -04-14              07/08/201

|            |                           | KSF   |      |      | EFFECTIVE |      |      | RPTG  | CNSLR |
|------------|---------------------------|-------|------|------|-----------|------|------|-------|-------|
| IDOC #     | --------NAME------------   | --LOC-- |    | -RSN- | ---DATE--- |     |      | -INST- | --ID- |
|            | THURMAN, DAVID            | STA   | F    | GEN  | 04        | 25   | 01   | MEN   | 00261 |
|            | BELL, REGINALD            | TAM   | E    | GEN  | 01        | 27   | 98   | MEN   | 00118 |
|            | REESE, DEANGELO           | NRC   | RO   | GEN  | 04        | 25   | 01   | MEN   | 00261 |
|            | AROCHO, ANGEL             | LAW   | R4   | GEN  | 01        | 19   | 00   | MEN   | 00262 |
|            | LANCASTER, DONALD         | PON   | CU   | GEN  | 01        | 27   | 98   | MEN   | 00118 |
|            | CHAMBERS, SCOTT           | MEN   | W    | GEN  | 06        | 11   | 98   | MEN   | 00083 |
|            | WINTERS, VINCENT L.       | CEN   | N5   | GEN  | 12        | 12   | 01   | MEN   | 00083 |
|            | CURRY, JOHN               | DIS   | 00   | GEN  | 02        | 17   | 00   | MEN   | 00262 |
|            | PENDLETON, PHILBERT B.    | MEN   | N2   | FITE | 01        | 22   | 03   | PON   | 00237 |
|            | SULLIVAN, RICHARD         | STA   | C    | GEN  | 01        | 27   | 98   | MEN   | 00118 |

NEXT KEY DATA: IDOC #: N02620
PF7: PAGE BACK  PF8: PAGE FWD

Date: 3/12/2008 Time: 5:52:53 PM

Page: 1 Document Name: untitled

OM0RM003                    ILLINOIS DEPARTMENT OF CORRECTIONS -- OTS        3/12/
PAGE: 0003                   PRM -- KEEP SEPARATE FROM INQUIRY              17:52:44
                                        DECLARES

IDOC#: N02620 EWING, LAMAR              1 B H   STA-F -04-14        07/08/201

| IDOC # | -------NAME------- | KSF --LOC-- | | -RSN- | EFFECTIVE ---DATE--- | | | RPTG -INST- | CNSLR --ID- |
|---|---|---|---|---|---|---|---|---|---|
| | WILSON, LORENZO | HIL | R1 | GEN | 11 | 08 | 07 | STA | 00260 |
| | JACKSON, DEMETRIUS | PON | N | GEN | 01 | 19 | 00 | MEN | 00262 |
| | YOUNG, CRAIG | 005 | 00 | ASBY | 03 | 21 | 96 | MEN | 00083 |
| | WALKER, RONALD | MEN | N | GEN | 02 | 03 | 97 | MEN | 00083 |

NEXT KEY DATA: IDOC #: N02620
PF7: PAGE BACK  PF8: PAGE FWD              PLEASE ENTER NEXT KEY DATA
INQUIRY COMPLETE

Date: 3/12/2008 Time: 5:52:57 PM

PLAINTIFF GROUP
Exhibit C

· **Protective Custody Status**

Stateville Correctional Center

**Offender's Request for Protective Custody** (check one):          ☑ Placement   or   ☐ Release

I, Lamar Ewing   N02620   XI C07   hereby request to be
placed in or released from protective custody status for the following reasons (provide specific reason, including names, nicknames, and cell numbers of enemies, etc.). I understand I will remain in protective custody status until voluntarily released or until all administrative remedies sought have been exhausted.

I have an extensive history of PC placement since 1986 in SCu°, MCu°, and P.Cu°. due to physical and sexual assaults, and threats of physical harm by STG's. See attached documentation + due to lack of space.

(Please refer to Internal Affairs)

Lamar Ewing                                        10, 15, 07
_____Offender's Signature_____                          Date

---

**Complete for Initial Placement:**

The offender was initially placed in protective custody status on ___/___/___ at _____ Time

☐ Shift Commander or Duty Administrative Officer notified: ___/___/___ _____

_____Name of Person Notified_____                       Date      Time

_____Print Name of Staff_____                    _____Signature of Staff_____

---

**Facility Decision:**

Your request for ☐ release from
☑ placement in or protective custody was reviewed by the facility on 11/15/07 and it was:

☐ Approved.
☑ Denied. You may immediately grieve this decision to the Administrative Review Board in accordance with DR 501 by so indicating below. If grieved, you will remain in protective custody status until a final decision is made by the Director.

11/19/17

_____Chief Administrative Officer's Signature_____                Date

---

**Offender's Acknowledgement:**

Please acknowledge receipt of this decision by signing below and indicating whether or not you wish to grieve this decision.

☑ I hereby grieve this decision to the Administrative Review Board. I understand the administration will forward this grievance to the Administrative Review Board; no other grievance form need be filed by me.

☐ I am not grieving release from protective custody status.

Lamar Ewing                                        11, 21, 07
_____Offender's Signature_____                          Date

---

This decision was served to offender by: Jerry Baldwin   [signature]   11, 21, 07
_____Print Name of Staff_____   _____Signature of Staff and the Director's determination.)_____   Date

☐ Offender refused to sign: (Forward to the Administrative Review Board for final review and the Director's determination.)

NOTE:   If grieved, the administration shall forward a copy of this form to the Administrative Review Board for direct review, attaching a copy of Protective Custody Status Review.

DOC 0054 (Rev. 3/2003)

Distributor:   Master File; Administrative Review Board, if applicable;   Printed on Recycled Paper
Offender

Ass. Att General
Ellen C. Bruce

gAve  12/19/07

SANDLIN  KNEW OF
Situation .

Illinois Department of Corrections
**Protective Custody Vote Sheet**
Stateville Correctional Center

PLAINTIFF GROUP
Exhibit _C1_

NUMBER: N 02620 NAME: LAMAR EWING   CELL: XLC 07 CUSTODY DATE: 9/17/82

RACE: B AGE: 46 HEIGHT: 5'7 WEIGHT: 166   ESCAPE RISK: H   GRADE B

OFFENSE: Mu/Dec / Attempt Armed robbery / Unarswim / SENTENCE: 50/yrs /15yrs /3 yrs /50yrs /4yrs/ 4yrs/
Mu/Dec / Felon poss weapon in prison/ Felon poss/use weap/Armed robbery /yrs / 6yrs / 6yrs
INTERNAL CLASSIFICATION LEVEL: ① M H OR PENDING   MSR/RELEASE DATE: / 8/19

TO STATEVILLE: 10/10/07 FROM: Pontiac   REASON FOR TRANSFER: Seg release/AEB Pi Rckout

DATE TO P.C. 10 / 07   FROM: (ORIENTATION) · SEGREGATION · UNIT ___X___

ENEMIES AT STATEVILLE:

| NUMBER: | NAME: | NUMBER: | NAME: |
|---|---|---|---|
| B31824 | NAME: David Thurman | NUMBER: | NAME: |
| N 034 54 | NAME: Richard Sullivan | NUMBER: | NAME: |
| A 62475 | NAME: Anthony Davis | NUMBER: | NAME: |

HISTORY OF AGGRESSIVE OR PREDATORY BEHAVIOR:
5 inmate assaults / 1 Staff Assault

HISTORY OF BEING A VICTIM:
Past SOF shot in right shoulder 1979. Ewing was assaulted by inmate
Garrett N71646 at Stateville 7/12/04. Ewing on 7/6/04 had spit in the
face of Garrett.
PAST/PRESENT STG AFFILIATION:
Insane Vice Lord - per OTS.

SPECIAL NEEDS, I.E., MEDICAL, MENTAL HEALTH, PHYSICAL, OTHER
Prior Adjustment PC July 2006.

PROTECTIVE CUSTODY HISTORY:
Past PC placements at Menard, Pontiac & Stateville.

INMATE'S RATIONALE FOR P.C.:
See Attached.

RESEARCHED BY
COUNSELOR Jerry Baldwin   RECOMMENDATIONS: Group 4.
AEB Rckout 8/24/5 at Pontiac. The inmate's reinvestigation
request was forwarded to the Assistant Warden of Program's
Office on 10/19/07.

RECEIVED
NOV 28 2007
OFFICE OF
INMATE ISSUES

| | DATE | YES | NO | COMMENTS |
|---|---|---|---|---|
| SUPERVISOR | 11-8-07 | X | | |
| A/W PROGRAMS | 11-14-07 | ✓ | | |
| WARDEN/DESIGNEE | DATE: 11-28-07 | | | |

| | GROUP I | (CELLED ALONE) |
|---|---|---|
| | GROUP II | (APPROVED) |
| X | GROUP IV | (NOT APPROVED) |

Dew 7/28/07

STA revised 4/05

INVESTIGATIVE Report                                    Exhibit C2

Investigator                                    Date of Report
Dick Baum                                       11/8/96
_____

Re: Miles Barnes

The undersigned Investigator interviewed the following inmate
at Menard Correctional Center, Chester Ill.

Upon meeting with inmate Lamar Ewing inmate # N02620, he related the
following information concerning this incident.

Ewing states that the gangs had control of the gallery at Statevill
and that the gang members either had there phone broken or confisca
, and Barnes had his own phone, and they wanted use of same, he states
that he knew most inmates by there nick names, and that is how he
will have to refer to them, indicating a subject named Frog, now
known to be Wilson, and a subject known as Black Gold, unk to this
investigator at this time, confronted Barnes about his phone, in that
they wanted it, and Barnes refused them, indicating that Barnes is
not a gang member, and they belived that there gang control allowed
them to take control of anything they wanted.

Ewing further states that there were several knife's on the gallery
and they were controlled by the Black gangster Deciples, and that
Frog was a ranking gang member of that faction.
He states it was a ego thing, to take control, indicating that there
were several threats on Bobbie, indicating that Pokey was pushing
the situation to the breaking point, where he told Frog he would giv
him assistance if needed.

Ewing states that the reason that most of the guys did not go to
the yard that day, is that the word was out among gang members, of
the hit on Bobbie, and fortunately he had a visit at the time, so he
did not get to the yard.
He states he will testify                        Dick Baum

PLAINTIFF
Exhibit D



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

February 11, 2008

Lamar Ewing
Register No. N02620
Stateville Correctional Center

Dear Mr. Ewing:

This is in response to your recent request for Protective Custody placement. In accordance with DR501D, the Stateville Correctional administration notified you that your request for protective custody was denied on November 19, 2007. This office has determined the issue will be addressed without a formal hearing.

A prior review was conducted by the Administrative Review Board relative to the denial of protective custody placement on August 28, 2007, while you were housed at the Pontiac Correctional Center. Based on that review, you were denied placement by the Director.

In your recent request dated October 15, 2007 you state essentially the same reasons as in the request reviewed in August; extensive history of PC placement due to physical and sexual assaults and threats of physical harm by STG's.

After an extensive review of your history this office finds that several of the individuals you list as "enemies", such as Young, Harris and Wilson are either paroled or at another facility. This office finds that you have not been in general population at Stateville for over 10 years. It is correct that you have had many PC placements; however many of the problems you discuss occurred while in PC. Based on numerous segregation placements it is also determined you had some degree of guilt in several incidents. As cited in the incident with Offender Garrett, you were also issued a disciplinary report for assault.

In reviewing all the materials as well as information provided by the Stateville Correctional Center, I find no new information which would warrant a reconsideration of the Administrative Review Board hearing conducted on August 28, 2007.

Therefore, this office recommends Offender Ewing be released from the Protective Custody Unit and returned to General Population.

For The Board: _____
Terri Anderson
Administrative Review Board
Office of Inmate Issues

Concurred: _____
Roger E. Walker Jr.
Director

CC: Warden McCann, Stateville CC

Rev'd 2-21-08

January 27, 2008

Exhibit E

#1

Mary E. Flowers
State Representative
House of Representatives
31st District, District Office
2525 W. 79th St.
Chicago, IL. 60652

In Re: Safety/Security of Incarcerated Persons

Dear Honorable M.E. Flowers,

I was advised to write to you in relation to an on going
situation where various employees of the Department of Corrections
have and continue to place me in imminent danger of severe
bodily injury while have knowledge that I am a member of a
group of inmates that are at pervasive risk of harm.

I have been incarcerated since 1982. During that time I
have been repeatedly both physically and sexually assaulted, in
some instances by gang affiliated
inmates. As an result of one such attack my ribs were
broken and received an eye injury that could that could
And am at risk of loosing vision if any further trauma occurs.
This incident occurred after an argument with a known high
ranking member of the "Disciples" prison gangs and the
incident is documented in my prison records, and I was
placed in protective custody as an result.

Through the years I have been repeatedly transferred and
have received protective custody placement as a result
of on going assaults and threats.

Exhibit E1 #2

In 1996 while in Menard Corr. Center, I was being denied protective custody, placement. I sought an injunction in the district court to enjoin correctional employees to provide me with protective custody. The defendants voluntarily provide placement, thereafter based on that concession, I petitioned the court to withdraw my motion. I have enclosed a copy of that withdrawl document, which was sign by District Judge William D. Stiehl.

In 1996, I was interviewed by an court appointed Private Investigator, Dick Baum, who interviewed me in reference to a gang related inmate assault which occurred in Stateville Corr. Center in 1994. After the passing of information implicating gang related inmates involvment in the assault, and my being writed to the circuit court of Will County as an material witness to the incident. I was threatened by known gang related inmates. I have enclose a copy of that report.

After having been in protective custody since 1998, I was abruptly reinterviewed for placement and denied. That occurred in about August while in Pontiac Corr. Center. On October 10, 2007 I was returned to Stateville where I had previously also approved for protective custody placement several times through the years. However, to my shock, I was denyed protective custody on November 21, 2007.



I to my extensive history of assaults and threats of harm, I have been approved for protective custody placement numerous times, until recently it seems that administers have abruptly come of the irrationale opinion that " I have not provided sufficient verifiable information" warrenting my placement. If this is so, than the very information that administraters used numerous times to warrant my placement, is now today and years later insufficient and verifiable. What is verifiable by my prison record is that on several occasions I have been physically injury, and these injuries were not self inflicted; that I was interviewed by an investigator, and did implicate known gang affiliated inmates as taking part in an assault, more-over, that prior administrato did and had seen fit to place me in protective custody.

I am without copies of the enclosed documents, therefore, I request that you return them. However, you may copy them for you records if need be.

Your assistance would be greatly appreciated

**GENERAL ASSEMBLY**
STATE OF ILLINOIS

CHAIRPERSON:
  HEALTH CARE AVAILABILITY AND ACCESS

VICE CHAIRPERSON:
  SMART GROWTH & REGIONAL PLANNING

MEMBER:
  DCFS OVERSIGHT
  DRIVER'S EDUCATION & SAFETY
  HIGHER EDUCATION
  HUMAN SERVICES

CAPITOL OFFICE:
  251-E STRATTON BUILDING
  SPRINGFIELD, IL 62706
  217/782-4207
  217/782-1130 FAX

DISTRICT OFFICE:
  2525 W. 79th STREET
  CHICAGO, IL 60652
  773/471-5200
  773/471-1036 FAX

E-MAIL ADDRESS:
  mflowers@hds.ilga.gov

## *Mary E. Flowers*
STATE REPRESENTATIVE
HOUSE OF REPRESENTATIVES
31ST DISTRICT

February 7, 2008

Lamar Ewing   N-02620
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434

Dear Mr. Ewing:

I am in receipt of your letter of January 29, 2008 regarding the safety/security of incarcerated persons, specifically yourself as it pertains to Protective Custody.

In your letter you state that you have been incarcerated since 1982. That based upon the very physical and sexual abuses you had sustained by inmates during that time, you have continuously received Protective Custody at whatever correctional facility you happened to be until 1996. At that time, while incarcerated at Menard Correctional Center, they denied you Protective Custody.

You cite that this prompted your filing a petition with the United States District Court, which you state you voluntarily withdrew when the Menard Correctional Center administrators consented to provide Protective Custody.

Additionally, in 1996, your need for Protective Custody was further exacerbated by you being summoned to court to testify on two occasions as a material witness regarding a gang-related inmate assault, which occurred in Stateville Correctional Center in 1994; thus posing a threat to your safety by gang members as they subsequently learned of your testimony.

Although having been afforded Protective Custody for years, you state placement in Pontiac Correctional Center was denied in August 2007; and upon returning to Stateville in October 2007, were you had previously been afforded Protective Custody, you were, much to your dismay, denied that status in November 21, 2007.

Based upon the information you have provided it seems you are still a person in dire need of Protective Custody. That this need is substantiated by Menard Correctional Center officials granting Protective Custody, thus precluding the follow through of your Motion for Injunction Relief in 1998.

Furthermore, your return to Stateville without the security of Protective Custody based upon your testimony as a material witness to the aforementioned gang-related inmate assault puts you at great risk.

I concur with your assessment of your need for the continuance of Protective Custody.

Rev 1 2-25

Lamar Ewing N-02620
February 7, 2008
Page 2


A copy of your letter and related correspondence, which you sent me and a copy of my letter to you will be forwarded to the Springfield office of the Illinois Department of Corrections asking for a review of your situation and requesting reinstatement of your Protective Custody status.

Sincerely,

Mary E. Flowers
State Representative 31st District

MEF/ej

P.S.   Per your request, we are returning the Request to Withdraw Motion for Injunctive Relief and the Investigative Report of Dick Baum for your files.

Exhibit F2

April 13, 2008

Roger E. Walker Jr., Director
Illinois Department of Corrections
P.O. Box 19277
1301 Concordia Court
Springfield, IL. 62794-9277

Dear Mr. Walker,

It is my hope that you have receive the correspondence
indicated in the enclosed copy of an letter forwarded
to me by Mary E. Flowers, State Representative, 31st
District.

I am currently housed at the S.C.C. and assigned to
F-House along with general population offenders, and
have received threats of physical harm. As an result
I have discontinued uses of showers and yard rec-
reation to avoid contact with offenders.

Your assistance would be greatly appreciated,

Sincerely,

Lawaer Evin

RECEIVED
APR 1 6 2008
OFFICE OF
INMATE ISSUES

N 02620
STA

3rd notice

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

Exhibit F3

Offender: _Ewing_    _Lamar_    _N02620_
     Last Name         First Name      MI      ID#

Facility: _Stateville_

☐ Grievance (Local Grievance # (if applicable): _4-13-08_ )    or    ☒ Correspondence

Received: _4,16,08_    Regarding: _PC_
      Date

---

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☐ Use the Committed Person's Grievance Report, DOC 0047 (formerly DC 5657), including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide a copy of the Committed Person's Grievance, DOC 0046 (formerly DC 5657) including the counselor's response if applicable).

☐ Provide date(s) of disciplinary report(s) and facility where incident(s) occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:   Administrative Review Board
         Office of Inmate Issues
         1301 Concordia Court
         Springfield, IL   62794-9277

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Good Conduct Credits (GCC) to Adjustment Committee. If request is denied, utilize the inmate grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to:   Illinois Prisoner Review Board
         319 E. Madison St., Suite A
         Springfield, IL   62706

**No further redress:**

☐ Award of Meritorious Good Time (MGT) and Statutory Meritorious Good Time (SMGT) are administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☒ This office previously addressed this issue on _2,11,08_ PC ; 2-25-08
                                     Date

☒ No justification provided for additional consideration.

**Other (specify):** _____

---

Completed by: _Sherry Benton_      _4,21,08_
        Print Name           Signature          Date

Distribution:   Offender; Inmate Issues

DOC 0070 (10/2001)
(Replaces DC 710-1274)

PLAINTIFF GROUP
Exhibit G

1 of 2

RECEIVED
FEB 25 2008
OFFICE OF
INMATE ISSUES

DATE: February 20, 2008
ATTN: Roger E. Walker Jr., Director
Illinois Department of Corrections
P.O. Box 19277, 1301 Concordia Court
Springfield, IL. 62794-9277

In Re: LAMAR EWING vs. ROGER E. WALKER JR., Case No. 07-3300

This correspondence is to give notice that the above captioned matter currently pending in the United States District Court for the Central District of Illinois involves Mr. Ewing's claim of infringement of his constitutional right not to be exposed to immediate danger of inmate assault. In addition, Mr. Ewing specifically claims that there exists an further continuation of risk of serious harm in that; Mr. Ewing requested protective custody placement at the Stateville C.C., and was denied on the institutional level, on November 21, 2007, Mr. Ewing appealed this denial to the ARB, and remained in the X-House Protective Custody Unit. However, on February 14, 2008, Mr. Ewing was removed from the P.C. Unit without an ARB interview, nor was Mr. Ewing advised of any ARB disposition. Mr. Ewing was moved to F-House, 4 gallery general population, where upon arrival he requested P.C. placement through C/O Hightower and Lt. Franklin. Mr. Ewing was told by this staff that, he could not sign into P.C. while in F-House. On the same date Mr. Ewing forwarded an "Emergency Grievance", pursuant to Title 20 Ill. Adm. Code 504F, 840 to the

CAO, Terry McCann alleging the above facts, and citing staff misconduct due to failure to comply with Title 20 Ill. Adm. Code 501D Protective Custody. At the time of mailing this notice, the CAO has failed to comply with the perscribed 3 days to respond as set forth is D.R. 504.840.

Mr. Ewing asserts that although he has requested protective custody, he is currently still housed in or on an general population gallery where he is being celled along with general population inmates, showered, escorted on passes etc. etc., moreover, his requests are being ignored be staff.

This notice is to advise you of these facts, and that it is the intention of Mr. Ewing to bring this matter to the attention of District Judge Harold A. Baker, before whom the afore stated litigation is pending, requesting additional judicial sanctions to curtail the current actions of your subordinates.

However, if you take immediate action to ensure compliance with the perscribed process of 501D including placement in the X-House P.C. unit, Mr. Ewing will consider the matter moot.

Sincerely,

Lamar Ewing

CC: Mary E. Flowers
    State Representive

Lamar Ewing

N-02620

**RECEIVED**

FEB 25 2008

OFFICE OF
INMATE ISSUES

PLAINTIFF GROUP
Exhibit 'G2

## CERTIFICATE OF SERVICE

I, Lamar Ewing, hereby certifies pursuant to penalties under 5/1-109, that I mailed a copy of the attached notice correspondence via regular U.S. mail to Roger E. Walker Jr., Director, Illinois Department of Corrections, P.O. Box 19277, 1301 Concordia Court, Springfield, IL. 62794-9277, on February 20, 2008.

SIGNED, _Lamar Ewing_
LAMAR EWING

**RECEIVED**

FEB 25 2008

**OFFICE OF
INMATE ISSUES**

PLAINTIFF GROUP
Exhibit G3

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

**Offender:** _Ewing_ _Lamar_ _____ _N02620_
Last Name      First Name      MI      ID#

**Facility:** _Stateville_

☐ Grievance (Local Grievance # (if applicable): _2-20-08_ ) or ☒ Correspondence

Received: _2,25,08_    Regarding: _ARB's Decision to Deny PC_
Date

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Use the Committed Person's Grievance Report, DOC 0047 (formerly DC 5657), including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide a copy of the Committed Person's Grievance, DOC 0046 (formerly DC 5657) including the counselor's response if applicable).

☐ Provide date(s) of disciplinary report(s) and facility where incident(s) occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information.  Please return the attached grievance or correspondence with the additional information requested to:   Administrative Review Board
Office of Inmate Issues
1301 Concordia Court
Springfield, IL   62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Good Conduct Credits (GCC) to Adjustment Committee. If request is denied, utilize the inmate grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to: Illinois Prisoner Review Board
319 E. Madison St., Suite A
Springfield, IL   62706

---

**No further redress:**

☐ Award of Meritorious Good Time (MGT) and Statutory Meritorious Good Time (SMGT) are administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☒ This office previously addressed this issue on _2,11,08_.
Date

☒ No justification provided for additional consideration.

---

**Other (specify):** _Decision Stands_

---

Completed by: _____  _Terry Benton_  _2,27,08_
Print Name      Signature      Date

Distribution:   Offender; Inmate Issues

Rev'd 3-7-08

DOC 0070 (10/2001)
(Replaces DC 710-1274)

## COMMITTED PERSON'S GRIEVANCE

| Date: 2-14-08 | Committed Person: (Please Print) Lamar Ewing | ID#: N02620 |
|---|---|---|

| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ Disability
- ☐ Other (specify): _____

☐ Disciplinary Report: ____/____/____  _____
    Date of Report          Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    Chief Administrative Officer, only if EMERGENCY grievance.
    Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
    administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
    Administrative Officer.

**Brief Summary of Grievance:** On the date of this grievance I requested protective custody placement through the F-House Unit staff Sgt. & Lt. However, I was informed that I could not request protective custody while housed in F-House 4 gal. general population. Pursuant to 501.310 "Each maximum security facility shall maintain an area for placement of committed persons in protective custody." 501.310 (a) In Stateville C.C. the administration per order of the C.A.O. have designated X Lower East & West and Upper East & West as the area for placement of committed persons in protective custody. Upon my request to

**Relief Requested:** That my request for protective custody placement be processed pursuant to established procedure under Title 20 Ill.Adm.Code section 501D

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Lamar Ewing | N02620 | 2/14/08 |
|---|---|---|
| Committed Person's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: 4/30/08      ☐ Send directly to Grievance Officer      ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: I Informed Placement And the part you in PC.

| E. Bitkiewin | [signature] | 5/1/08 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

### EMERGENCY REVIEW                    ARBIC

Date Received: 2 20 08      Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☒ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

| W. McCann | | 2 20 08 |
|---|---|---|
| Chief Administrative Officer's Signature | | Date |

Distribution: Master File; Committed Person                    Page 1                    DOC 0046 (Eff. 10/2001)
                                                                                        (Replaces DC 5657)
Printed on Recycled Paper

Rev'd 2-22-08 Y.E.

the F- House Sgt. & Lt. on 2-14-08 staff was required
by 501.320 Procedure for Placement " The employee to
whom such a request is made shall promptly notify the C.A.O.
I assert that the F- House staff Sgt. & Lt. have
implemented an de facta unwritten policy that completely
igorcs departmental establish procedure for protective
custody placement.
Due to my fearing for my safety and welbeing I
requested protective custody placement.

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 3-26-08 | Offender: (Please Print) Lamar Ewing | ID#: N02620 |
|---|---|---|

| Present Facility: | Facility where grievance issue occurred: |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____/____/____
  Date of Report        Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: On February 14, 2008, I was moved to F-House where I requested P.C. placement pursuant to DR 501.320 (a). I related this request to Lt. Franklin and C/o Hightower who advised me that, I could not sign into P.C. status in F-House. On the same day I forwarded an emergency grievance to CAO T. McCann, who after review, determined the grievance did not substantiate an emergency, and returned the grievance to me. After receiving the returned grievance, I forwarded it to Counselor, E. Butkiewicz, who informed me that he had informed "Placement" of my request, and returned the grievance.

Relief Requested: That I be immediately interview and placed in the P.C. area, and that I receive access to the grievance process by the return of my grievances on this issue.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _Lamar Ewing_ | N02620 | 3 , 26 , 08 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

| Date Received: 4 / 8 / 08 | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: I sent the Placement office your name to be placed in P.C.

| E. Butkiewicz | _E. Butkiewicz_ | 4 / 16 / 08 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

### EMERGENCY REVIEW

| Date Received: ____/____/____ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| Chief Administrative Officer's Signature | | ____/____/____ Date |
|---|---|---|

Distribution: Master File; Offender                      Page 1                      DOC 0046 (Rev. 3/2005)
Printed on Recycled Paper

As of the date of this grievance, I have yet to be moved to the P.C. area, X-House, interviewed for P.C. placement nor have I received the grievance counselor E. Butkiewicz stated he forwarded by mail.

Exhibit H2

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 3-26-08 | Offender: (Please Print) Lamar Ewing | ID#: N02620 |
|---|---|---|
| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. | |

**NATURE OF GRIEVANCE:**

☐ Personal Property  ☐ Mail Handling  ☐ Restoration of Good Time  ☐ Disability
☐ Staff Conduct  ☐ Dietary  ☐ Medical Treatment  ☐ HIPAA
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator  ☒ Other (specify): Safety

☐ Disciplinary Report: ____/____/____
Date of Report        Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
Administrative Officer.

**Brief Summary of Grievance:** The grievant is currently assigned to F-H14 along with inmate A. Woodland. Since being celled my cellmate has several times masturbated while in my presence. Due to my having a history of both sexual and physical abuse, I am in fear of my safety because, Woodland's conduct is in violation of departmental regulations, and the Stateville Handbook, pg. 30, Sexual Abuse / Assault / Misconduct Prevention and Intervention. Furthermore, I have in the past been a material witness involving an Aggravated Battery

**Relief Requested:** I request to be removed from the cell with Woodland and that he be placed on my Keep Separate From listing

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Lamar Ewing _____ N02620 _____ 3,26,08
Offender's Signature        ID#        Date
(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

Date Received: 4/9/08   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: You do not have him as a Cellmate. Any longer. If you want him on the list I need his ID number

E.B.Tkiewin _____ E.Rtk. _____ 4/23/08
Print Counselor's Name        Counselor's Signature        Date of Response

---

**EMERGENCY REVIEW**

Date Received: ____/____/____

Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____ ____/____/____
Chief Administrative Officer's Signature        Date

(stabbing) incident in which I informed an Will County Circuit Court, appointed Private Investigator "Dick Baum" of Disciples (STG) members complacency in that incident involving Miles Barnes, Wilson, Pearson, and several other gang related Offenders. The incident occurred in approx. 1994, and I was interviewed by Investigator Dick Baum in Nov. 1997 while in Menard C.C. Thereafter, I was writed to the Will County Court twice in this regard, whereby the above gang related Offenders were present and issued threats of physical harm.

While being the cellmate of Albert Woodland, he stated that he was awhere of my past, and had been advised by who he identified as his brothers, also I became awhere that Woodland is an Disciple (STG) affiliate, and ranking member thereof.

PLAINTIFF GROUP
Exhibit I

STATE OF Illinois )
               ) SS:
COUNTY OF WILL )

## AFFIDAVIT

I, ANDREW LAMON, R-16056, DO HEREBY DECLARE AND AFFIRM THAT THE FOLLOWING STATEMENT(S) WITHIN THIS INSTANT AFFIDAVIT, IS TRUE AND CORRECT, IN SUBSTANCE AND IN FACT:

1). THAT, I AM THE AFFIANT, ANDREW LAMON, AND THAT, I AM AN INMATE AT THE STATEVILLE CORR. CENTER.

2). THAT, CURRENTLY, I AM BEING HOUSED IN F-HOUSE, CELL # 413, AND THAT, LAMAR EWING IS CURRENTLY IN F-HOUSE, CELL # 414.

3). THAT, I AM AQUAINTED WITH MR. EWING, FROM PONTIAC, CORR. CENTER, WHERE I FIRST MET HIM IN PROTECTIVE CUSTODY, IN 2006.

4). THAT, UNTIL OCTOBER 2007, I WAS HOUSED IN D-HOUSE FOR APPROXIMATELY, ONE(1) YEAR, (GENERAL POPULATION), WHERE I PERSONALLY OBSERVED, GANG ACTIVITY, WHILE BEING AT RECREATION, CHURCH AND IN THE CHOW HALL AND THAT, BECAUSE OF THREATS OF PHYSICAL VIOLENCE AT THE HANDS OF GANG MEMBERS, I REQUESTED (P.C.)

5). THAT, GANG ACTIVITY IS NOT ONLY REAL HERE IN STATE-VILLE CORR. CENTER, BUT PALPABLE, AND THAT, WHILE I WAS BEING INTERVIEWED BY C/O L. TURNER, IN REGARDS TO THE GANG MEMBER ALLEGATION OF THREATS SET-FORTH BY ME, IN REQUESTING (P.C.), IN OCTOBER, 2007, DID INFACT VIEW, ON C/O L. TURNERS COMPUTOR, NUMEROUS, HIGH RANKING CHIEFS AND UNDERLINGS OF STATE-VILLE CORR. CENTERS, GANGS AND WAS DIRECTED TO IDENTIFY THE GANG MEMBER, (KNOWN TO C/O TURNER), WHO WAS THREATENING ME WITH PHYSICAL VIOLENCE.

6). THAT, ON A DAILY BASIS, I HAVE OBSERVED, SEVERAL INMATES, SPEW INVECTIVES AND THREATEN MR. EWING WITH PHYSICAL VIOLENCE, IF AND WHEN THE OPPORTUNITY PRESENTS ITSELF AND THAT, THESE TAUNTS AND THREATS ARE NOT LIMITED TO FOUR (4) GALLERY INMATES, BUT RATHER, A COMBINATION OF, (4) GALLERY AND THE SEG-REGATION GALLERIES.
ADDITIONALLY, I HAVE HAD THE OPPORTUNITY TO WITNESS THAT THE MAJORITY OF THE INDIVIDUALS WHO TAUNTS MR. EWING AND SPEW INVECTIVES AT HIM, IN LIGHT OF THE USE OF GANG SIGNS AND GANG REFERENCES, I BELIEVE THEY ARE GANG AFFILIATED.

PLAINTIFF GROUP
Exhibit 11

7) THAT, ON SEVERAL OCCASSIONS, IN REGARDS TO THE THREATS OF PHYSICAL VIOLENCE AT THE HAND OF THESE INMATES, IN F-HOUSE, (GENERAL POPULATION), I HAVE ADVISED MR. EWING THAT, (TO BE PHYSICALLY SAFE, FROM WHAT I BELIEVE TO BE, GANG MEMBERS), THAT, HE SHOULD REQUEST PROTECTIVE CUSTODY.

8) THAT, AFFIANT, AND MR. EWING, WHILE HOUSED IN F-HOUSE, (GENERAL POPULATION), HAS REPEATEDLY RE-QUESTED AND BEEN DENIED, THROUGH F-HOUSE LIEU-TENANTS, PROTECTIVE CUSTODY PLACEMENT.

9) THAT, WHERE MR. EWING'S CELL, #414, IS LOCATED LESS THAN A FOOT FROM AFFIANTS CELL # 413, I HAVE AS RECENTLY AS MARCH 14TH 2008, WITNESSED THE F-HOUSE LIEUTENANTS, REFUSE MR. EWING ENTRY INTO PROTECTIVE CUSTODY, UNDER THE THINLY VIEDED GUISE THAT, MR. EWING MUST GO TO ANOTHER CELL-HOUSE IN STATEVILLE'S GENERAL POPULATION, TO RE-QUEST PROTECTIVE CUSTODY.

10) THAT, AS POINTED OUT IN PARAGRAPH # 5, HEREIN, I AM AQUAINTED WITH MR. EWING FROM PONTIAC CORR. CENTER.
THAT SAID, I HAVE OBSERVED THAT, MR. EWING, WAS PLACED IN CELL # 414, F-HOUSE, ON OR ABOUT FEBRUARY 14TH, 2008, AND THAT, WHERE F-HOUSE, FOUR (4) GALLERY INMATES, ARE ALLOWED ONE (1) SHOWER PER WEEK, MR. EWING HAS CONSTANTLY REFUSED TO GO TO THE SHOWER AND WHERE, F-HOUSE INMATES ARE ALLOWED TWO (2) RECREATIONAL YARDS, MR. EWING, DOES NOT PARTAKE AND HAS REFUSED THIS AS WELL. THAT, ONE OF THE REASONS MR. EWING DOES NOT GO TO THE SHOWER OR LEAVE HIS CELL, IS BECAUSE INMATES WHILE SPEWING INVECTIVES AT MR. EWING HAS SWORN THAT, "THEY ARE GONNA THROW HIM OVER THE FOUR (4) GALLERY RAIL, IF HE EVER COMES OUT OF HIS CELL.

11) THAT, SEVERAL TIMES I HAVE ADVISED MR. EWING TO ALERT PRISON OFFICIALS ABOUT THE THREAT OF BEING HURLED OFF OF THE FOUR (4) GALLERY RAIL TO HIS DEATH, HOWEVER, MR. EWING ADVISED ME THAT, HE HAS RE-PEATEDLY INFORMED PRISON OFFICIALS, BUT THAT THEY IGNORE HIS PLEA FOR SAFETY AND HELP.

DATED: MARCH 16TH 2008

ANDREW LAMON
ROUTE 53 P.O. BOX 112
JOLIET, ILLINOIS 60434.
AFFIANT

ILLINOIS DEPARTMENT OF CORRECTIONS
COMMITTED PERSON'S GRIEVANCE

PLAINTIFF
GROUP
Exhibit
J

| | (Please Print) Lamar Ewing | | No. 2620 |
| Present Facility: Pontiac | | Facility where grievance issue occurred: Pontiac | |

**NATURE OF GRIEVANCE:**

JUL 2 2007

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [x] Other (specify): Disparity In P.C. Placements

- [ ] Disciplinary Report: ____/____/____
  Date of Report _____ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

**Brief Summary of Grievance:** On 4-19-07 the Grievant was walked from the South P.C. unit and placed in the ECH seg unit due to Giving False Information To An Employee. Grievant had been housed in the P.C. unit since 1-23-06. During Grievants confinement in both the SCH and ECH he has observed that there has been disparity in inmates whom are allowed to return directly to the P.C. unit upon their seg release dates. Moreover, Grievant has observed that some of the inmates whom were allowed to directly return to the P.C. unit had more severe rule infractions than the Grievant, and in some cases have been walked to seg several

**Relief Requested:** That upon Grievants seg release date of 7-19-07 he be returned to the South P.C. Unit.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Lamar Ewing_ _____        No. 2620      7 / 1 / 07
Committed Person's Signature                                ID#              Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 7 / 11 / 07        [ ] Send directly to Grievance Officer        [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Administrative decision

_Sandy Russell_ _____        _Sandy Russell_ _____        7 / 11 / 07
Print Counselor's Name                     Counselor's Signature                  Date of Response

---

**EMERGENCY REVIEW**

Date Received: 7 / 2 / 07        Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____                                    7 / 3 / 07
Chief Administrative Officer's Signature                              Date

Distribution: Master File; Committed Person        Page 1        DOC 0046 (Eff. 10/2001)
                                                                (Replaces DC 5657)

Printed on Recycled Paper

J

**0 45637**

PLAINTIFF
GROUP
Exhibit
3A

times yet still are allowed to return directly to the P.C. unit upon their seg release dates.

As an result of the stated rule Infraction, the Adj. Comm recommended 90 days seg. and 90 days C-grade. After serving over two months seg in the ECH, on 6-29-07 Grievant was moved to the WCH #814.

The Grievant is concerned about his safety due to he has an extensive history of P.C. placement in Stateville, Menard, and Pontiac dating back to 1986, when he was initially assaulted by Disciple Gang Members due to an vendetta. As an result Grievant lost vision in his right eye and suffered broken ribs. Grievant was given 2 surgical operations to restore vision to his right eye. This inicident occcured in Stateville. During the mid to late 90's while in Menard the Grievant was physically and sexually assaulted several times by more aggressive inmates some what inpart due to his small stature, chronic asthma, and history of victimization among the inmate population. Grievant was again assaulted in Stateville during 2004 by inmate Garrett whom beat Grievant with an crutch thereby braking his right hand.

The above inicidents are a matter of Grievants Masterfile, and an transfer to Menard or Stateville would only subject him to further inmate abuse.

It is the assertion of the Grievant that the above stated practice ignores the perscribed procedures set forth in 501D Protective Custody; and section 501.320 Procedure for Placement.

PLAINTIFF Exhibit J1

July 8, 2007

To: Chief Administrative Officer
     Eddie Jones
Fr: Mr. Lamar Ewing N-02620 WCH 814
Sub: Emergency Grievance Status



Dear Mr. Jones,

I was previously assigned to Protective Custody until 4-19-07 when I was taken to seg. After being concerned for my safety due to my observing some disciplinary seg. inmates being returned directly to the P.C. unit upon seg. release dates, and some not. I forwarded to you an emergency grievance pursuant to 504.840. on July 1st.

I would like to know the status of the grievance?

Thank you,
L. Ewing

On 7/9/07 your counselor has referred your request to Counselor McNabb (the P.C. counselor).

PLAINTIFF Exhibit 4

J1

PLAINTIFF
Exhibit J2

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

| | | |
|---|---|---|
| **Name:** EWING, LAMAR | **IDOC Number:** N02620 | **Race:** BLK |
| **Hearing Date/Time:** 10/12/2007  10:00 AM | **Living Unit:** STA-X-L | **Orientation Status:** N/A |
| **Incident Number:** 200701462/2 - PON | **Status:** Expunged Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 4/19/2007 | 200701462/1-PON | LIBBY, JACK R | INTERNAL AFFAIRS | 11:00 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 303 | Giving False Information To An Employee | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS
THIS IDR IS BEING EXPUNGED PER ARB ORDER 09/17/07.

## BASIS FOR DECISION
THIS IDR IS BEING EXPUNGED PER ARB ORDER 09/17/07 DUE TO NON-COMPLIANCE WITH DEPARTMENT RULES 504.30 AND 504.80.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| | ---- E X P U N G E D ---- |

**Basis for Discipline:**

## Signatures
### Hearing Committee

| | | | |
|---|---|---|---|
| LINGLE, DAVID A  - Chair Person | *Signature* | 10/12/07 | WHI |
| | | Date | Race |
| MACK, KATHY J | *Signature* | 10/12/07 | BLK |
| | | Date | Race |

Recommended Action Approved

## Final Comments: N/A

EDDIE  JONES / PP  10/15/2007 | *Signature*  10/15/07
Chief Administrative Officer | Date

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504; Subpart F.

*[signature]* | 10-17-07 3:0pm by mail
**Employee Serving Copy to Committed Person** | **When Served -- Date and Time**

J2

Exhibit K

SD428 MC#1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILLIP MEEKS,                          )
                                        )
                    Plaintiff,          )
                                        )
          v.                            )
                                        )
MICHAEL LANE, Director of Illinois )    No. 75 C 96
Department of Corrections; LEO          )
MEYER, Deputy Director of Adult         )
Institutions; RICHARD DeROBERTIS,       )
Warden of Stateville Correctional       )
Facility; J.W. FAIRMAN, Warden of       )
Pontiac Correctional Facility; and )
JAMES THEIRET, Assistant Warden         )
for Operations of Pontiac,              )
                                        )
                    Defendants.         )

## CONSENT DECREE

This action was filed by plaintiff Phillip Meeks on January 8, 1975, pursuant to 42 U.S.C. Section 1983 and 28 U.S.C. Section 2201, 2202 and 1343. A supplemental complaint was filed on January 14, 1976, following which, pursuant to 28 U.S.C. Section 2281, a statutory three-judge court was empanelled.

An amended complaint was filed on June 23, 1976, which challenged the constitutionality of the Administrative Regulations of the Illinois Department of Corrections ("the Department"), promulgated pursuant to Ill. Rev. Stat. ch. 38, § 1003-7-4. Plaintiff alleged that existing statewide regulations failed (1) to protect the plaintiff from unprovoked

SD428 MC

attacks by other inmates, (2) to ensure living conditions to
inmates confined in protective custody quarters which were
consistent with the Eighth Amendment to the Constitution,
and (3) to ensure inmates involuntarily placed and held in
protective custody status due process of law.

The amended complaint sought compensatory and
punitive damages for plaintiff's personal injuries and lost
wages. It also sought injunctive relief requiring the
adoption of statewide regulations by the Department which
would ensure minimal inmate security, would establish minimum
standards for protective custody confinement and would
ensure due process rights to persons involuntarily placed
and kept in protective custody.

The defendants, while denying the allegations of
the amended complaint, acknowledge that inmates in the
custody of the Department have a right to be afforded pro-
tection against excessive and unprovoked violence upon their
persons from other inmates, that inmates held in protective
custody should be afforded certain minimal recreational,
educational, vocational and religious opportunities and, if
held involuntarily for purposes of their own protection,
should be afforded due process of law in determining whether
and under what circumstances they may be returned at their
own request to the general prison population.

By agreement of the parties, the Court has not
made any findings of fact or conclusions of law or conducted
any evidentiary hearings with regard to the merits of plaintiff's
claims.

-2-

In order to effect an amicable settlement of the
issues involved in this action, the parties agree and the
Court enters the following decree:

Defendants agree to promulgate Administrative
Regulations and Directives designed to implement the following
provisions, which are applicable to all of the maximum
security institutions in the Department, except the Dwight
Correctional Center.

A.    SECURITY.

1.    Inmates newly admitted to the custody of the
Department shall be evaluated at a Reception and Classifica-
tion Center in accordance with a classification process
which shall consider, among other factors, each inmate's
age, physical size, likely level of dangerousness and physical
agressiveness towards staff and other inmates, special
educational or vocational training needs, protective custody
needs and known history of significant gang involvement,
either as a member, an affiliate, or a victim.  Placement of
an inmate in an institution will be determined in accordance
with this process.  Review of an inmate's classification
shall occur at least once per year.

2.    After assignment to an institution, and
during the first ten working days at that institution, an
effort shall be made to ascertain whether an inmate, because
of his physical or emotional characteristics, prior criminal
activity or associations or any special circumstances, is in

need of special protection at that institution and what
extraordinary means, if any, may be necessary to protect him
while in the institution.  An inmate shall be personally
interviewed as a part of this process, and be given an
opportunity to discuss his needs for protection.

3.    Each maximum security prison in the Department
except Joliet shall maintain a housing area for those inmates
who have established to the satisfaction of prison officials
that, because of their age, size, nature of crime, prior
testimony, gang involvement or other like factors, they may
be in need of special protection and that they are not
likely to behave in a manner so as to threaten or intimidate
other residents.  All inmates classified by a Reception and
Classification Center as "medium security" shall be consid-
ered for these areas.

Inmates in such housing areas shall have the same
opportunities as other inmates in other housing areas of the
general population for visitation, telephone and commissary
privileges, job assignments, vocational and educational
assignments, recreation, access to prison libraries, access
to religious services and to all other institutional programs.

4.    Inmates in such housing areas shall be fed
separately from other inmates in the general prison popula-
tion.  This may be effected either by serving them in different
physical areas or at a different time of day than the remainder
of the general prison population.

-4-

5.   Defendants shall use reasonable efforts to ascertain the identities of those inmates who have been or are involved in significant gang activity as a member or a victim.   These efforts shall include but are not limited to continued routine contact with state and local law enforcement agencies and gang intelligence units, exchange of information between institutions within the Department and coordination of investigative activities.   The identities of inmates having any significant gang involvement and the nature of that involvement shall promptly be made known to wardens and assistant wardens.   This information shall be shared with all correctional staff of Captain level and above at their periodic meetings with the warden.

6.   Information concerning a physical attack on an inmate, including the name(s) of the assailant(s) if known, shall be placed in the master files of any victim of such an attack and this information shall be considered in all cell placements of such inmates.   This information also shall be considered prior to any transfer to another institution.

B.   PROTECTIVE CUSTODY.

1.   Each maximum security institution will have a provision for protective custody placement in a protective custody area.   ("PCA.")

2.   PCA's shall in no event be physically located on the same gallery as disciplinary segregation facilities,

and inmates assigned to segregation shall not be afforded access to any area within the PCA's.

3.    Inmates confined in PCA's shall be offered the opportunity for seven hours per week of out-of-cell recreation, excluding transport time.  Officials shall make a good faith effort to investigate ways in which inmates held in PCA's may receive more than the minimum recreational periods required in this section, and, where feasible, to provide more than the minimum.

4.    Inmates confined in PCA's shall be afforded the opportunity for access to the general library at least one hour per week, and to the prison law library for at least four hours per week.  However, in the event that separate facilities do not exist for use by protective custody inmates or where demand exceeds the availability of separate facilities, law clerks will be made available to do research and obtain copies of requested documents from the law library or general library.  In addition, the services of inmate law clerks to do legal research and to prepare legal documents shall be made available to those inmates confined to PCA's who are unable to do their own research. Books and magazines will be delivered to inmates in PCA's by way of library clerks who will circulate within the unit on a daily basis during library operating days.

5.    Inmates confined in PCA's shall be afforded the opportunity to enjoy telephone and commissary privileges

and to receive visitors on an equal basis and with the same frequency as inmates confined in the general population. Where the warden deems it impracticable to have PCA inmates taken to commissary, those inmates shall be permitted, on an equal basis and with the same frequency as inmates confined in the general population, to place orders from the commissary and have commissary items delivered to their cells under the supervision of a prison official.

6.    Inmates confined in PCA's shall not be required to receive visitors or otherwise move outside their protective custody cells while restrained in cuffs or belts or any other restraining device for any reason that would not require restraints for those inmates if they were assigned to the general population.

7.    Blankets, sheets, toiletries, showers, clean laundry, clean clothing, and cleaning agents and utensils shall be available to inmates confined in PCA's on an equal basis and with the same frequency as inmates assigned to the general prison population.

8.    Inmates confined in PCA's shall be afforded the opportunity to enjoy educational opportunities commensurate with those available to inmates in the general population. Literacy training shall be available.  An inmate who wishes to pursue his General Equivalency Degree shall be provided with the necessary materials and instructional assistance upon request.  Enrollment in correspondence courses shall be

permitted on an equal basis with that permitted for inmates
confined in the general population.  For those inmates
confined in PCA's for longer than 30 days, college credit
courses will be offered, provided that at least 12 qualified
inmates request to enroll in such a course, subject to the
ability of the Department to contract for such courses.  The
Department will make good faith efforts to execute such
contracts.  Where available to inmates assigned to the
general population, TV courses will be made available to
inmates in PCA's.

     9.   Within 12 months following entry of this
decree the Department shall formulate a plan to provide job
opportunities to inmates who have been placed in PCA's for
more than 30 days.  This plan shall be implemented within 12
months following the formulation of the plan.

     10.  Inmates confined in PCA's shall be provided
food of comparable quality, quantity, and temperature as
that provided to inmates assigned to the general population.
All meals served in the cells shall be served under the
immediate and direct supervision of a prison official.  At
least one meal per day shall be served outside the cells,
except at Stateville.  With regard to Stateville, the
Department will make a good faith attempt to locate an area
which would be suitable for use as a protective custody
dining area.  If any new facilities are constructed at
Stateville, the Department will consider using them for
protective custody dining.

11.    Inmates confined in PCA's shall be offered
the opportunity to attend a communal religious service
outside their cells once per week.

12.    Inmates confined in PCA's shall be permitted
hobbycraft items in their cells unless these items are not
permitted for reasons that would be equally applicable to
inmates assigned to the general population.

13.    The provisions of paragraphs 5, 6 and 7 of
Section B of this decree shall also apply to any inmate
placed in an area other than a PCA for his own protection.
The remaining provisions of Section B of this decree shall
also apply to any inmate who has been held in an area other
than a PCA for his own protection for more than 30 days.

C.    PLACEMENT AND RETENTION IN PROTECTIVE CUSTODY.

1.    Inmates who believe that their safety and
security are being threatened in the general population may
request protective custody placement.  At least once every
30 days, a correctional counselor shall interview each
inmate confined to a PCA or to any area other than a PCA
where inmates are held for their own protection to determine
the necessity of their continued placement there.  With
regard to any inmate who has been confined to a PCA or to
any area other than a PCA for his own protection for six
months and who has requested a transfer to another institu-
tion, the Assignment Committee shall recommend and the
Transfer Coordinator shall seriously consider the transfer,

subject to available space in the transferee institution and subject to the provisions of Administrative Regulation 819 and transfer directives.

2.    In the event that any employee of the Department becomes aware of specific circumstances which might threaten the safety or security of an inmate, the employee shall transmit this information to the Warden or his designee.

3.    In the event the Warden or his designee determines that there exists a clear and immediate threat to the safety of an inmate, the Warden or his designee shall offer the inmate placement in protective custody.  If the inmate refuses, the Warden or his designee may decide to place an inmate involuntarily in a PCA or in any area other than a PCA where inmates are held for their own protection. In this event, the inmate shall be provided with notice of the decision and a hearing before the Assignment Committee within three working days of such placement.

The Assignment Committee shall make a recommendation to the Warden as to action that should be taken with respect to the inmate (e.g. continued protective placement in a PCA or other area for a fixed number of days, release from protective confinement to the general population, transfer to another institution, etc.) and shall deliver a written report, including the recommendation, to the Warden and to the inmate within seven working days after the hearing.

Every 14 days after the original hearing the inmate shall appear before the Assignment Committee which shall determine if continued placement in a PCA or other area is necessary to maintain the inmate's safety and security. If the Committee makes such a determination, it shall again make the report and recommendation outlined above. Upon receipt of the report and recommendation, the Warden shall render his decision within 3 working days. If the inmate is dissatisfied with the Warden's decision, the inmate may initiate a grievance with the Administrative Review Board. The Administrative Review Board shall render its decision on the grievance within 21 days.

4.    In evaluating whether inmates shall be retained in a PCA or in other areas where they are held for their own protection, the Assignment Committees, Wardens, and the Administrative Review Board shall pursue the goal of returning inmates to an appropriate general population as soon as feasible, considering the inmates' needs for protection and the alternatives available.

D.    ADMINISTRATION.

1.    Full compliance with the provisions of this decree shall be achieved on or before July 1, 1984.

2.    The parties shall each select two members to be placed on an independent monitoring panel which will report twice yearly to this Court until July, 1984, on the progress being made toward the implementation of the above

-11-

provisions. The four members thus selected shall choose a
fifth, who will act as Chairman.  The Department will reim-
burse the out-of-pocket expenses of the members of the
monitoring committee incurred while in Illinois at the same
rate payable to state employees.

In addition to the foregoing, the parties agree
that, in full settlement of the damage issues presented in
this case, defendants shall pay to plaintiff $5,000.  They
shall also pay attorneys' fees and costs of $25,000.  All
other fees and costs are waived.  The defendants assign any
rights to payments under Ill. Rev. Stat. ch. 127, §§ 1301 et
seq. to the plaintiff.  It is understood that collection of
the $25,000 in attorneys' fees and costs will first be
attempted through the normal procedures of the Illinois
Court of Claims.  The sum of $5,000 shall be paid to plain-
tiff no later than August 31, 1981.

ENTERED THIS 20 DAY OF JULY, 1981


Luther M. Swygert
Judge of the U.S. Court of Appeals
For the Seventh Circuit


Julius J. Hoffman
Senior District Judge


Thomas R. McMillen *
District Judge


Agreed:

Michael P. Lane
Director
Illinois Department of Corrections


Tyrone C. Fahner
Attorney General of Illinois
by Paul P. Biebel, Jr.
First Assistant Attorney General


Melbourne A. Noel, Jr.
Attorney for Defendants


Joan M. Hall
Attorney for Plaintiff, Phillip Meeks


*I agree with the substance of the foregoing Consent Decree
 but find some technical problems with it which I will reserve
 comments on until enforcement proceedings, if any.


-13-

COUNTY OF

IN THE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

LAMAR EWING )
          Plaintiff )
                    )    CASE NO._____
        vs          )
JERRY BALDWIN, et al., )
          Defendants )

NOTICE OF FILING

TO: Clerk of the United    TO:_____    TO:_____
    States District Court      _____        _____
    219 S. Dearborn, 20th Fl.  _____        _____
    Chicago, IL. 60604         _____        _____
1 Original & ___ copy     ___ copy(ies)         ___ copy(ies)

PLEASE TAKE NOTE that on the `31` day of ___July___, 2008, I
have filed, through the U.S. Mail, with the above named parties, the below listed
documents (number of copies & originals filed are listed below the addresses of
the parties):

1) Civil Rights Complaint: 1 original & 9 copies
2) Motion to Proceed In Forma Pauperis: 1 original & 2 copies
3) Memorandum of Law In Support of Plaintiff's Request for Injunctive Relief
4) 1 original & 9 copies
5) _____
6) _____
7) _____
8) _____

## AFFIDAVIT OF SERVICE

I, ___Lamar Ewing___, being first duly sworn on oath, deposes and avers
that he/she has caused the above stated documents in the above stated amounts, to be
served upon the above listed parties by placing the same in the U.S. MAIL BOX on
Housing Unit # X located at _Stateville_ Correctional Center in _Joliet_, IL for
delivery as 1st Class Mail.

s/s _Lamar Ewing_
NAME: _Lamar Ewing_
IDOC Reg. No. _N02620_
P.O. Box 112, Joliet, IL. 60434

Subscribed and sworn to before me this ___ day of _____, ___.
        _None Present_
        NOTARY PUBLIC

Revised Jan 2002